1  LEXINGTON LAW GROUP
   Mark N. Todzo (State Bar No. 168389)
2  503 Divisadero Street
   San Francisco, CA 94117-2212
3  Telephone: (415) 913-7800
   Facsimile: (415) 759-4112
4  mtodzo@lexlawgroup.com

5  Counsel for Plaintiffs
   (Additional Counsel in Signature Block)           **E-filing**
6

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION           **EDL**

11  EDWIN CAHILL AND FRANK ROGERS,        **C** Case No. **12**    **4 6 9 1**
12
                         PLAINTIFFS,   CLASS ACTION COMPLAINT
13
         vs.
14
    CITRUS WORLD, INC. d/b/a FLORIDA'S      DEMAND FOR JURY TRIAL
15  NATURAL GROWERS,

16                       DEFENDANT.

17

18                        **NATURE OF THE ACTION**

19      1.      Plaintiffs Edwin Cahill and Frank Rogers ("Plaintiffs"), by their attorneys, on behalf

20  of themselves and all others similarly situated, make the following allegations pursuant to the

21  investigation of their counsel, which included, among other things, a review of public documents,

22  marketing materials, and announcements made by Florida's Natural Growers, a division of Citrus

23  World, Inc. ("Defendant"), and based upon information and belief, except as to allegations

24  specifically pertaining to themselves and their counsel, which are based on personal knowledge.

25      2.      This class action lawsuit asserts that from as early as September 2008 through the

26  present, Defendant, one of the leading producers and marketers of fruit juices, has been falsely

27  claiming that its heavily processed, designed, and modified "not-from-concentrate" Florida's Natural

28  premium orange juice ("Florida's Natural") is "100% Pure" and "Squeezed From Our Fresh Florida

    CLASS ACTION COMPLAINT                                                        1

1 Oranges." In truth, Florida's Natural is heavily processed and flavored, and is not 100% pure,
2 natural, or fresh.

3   3.   Defendant markets and sells its Florida's Natural juice as a premium product that is
4 pure, natural, and freshly squeezed. Yet, mass marketed orange juice such as Defendant's cannot be
5 fresh-squeezed, as fresh-squeezed orange juice is unstable and has a short shelf-life. Fresh-squeezed
6 orange juice has a shelf life of approximately ten days refrigerated and between three and six months
7 frozen. Industrial processing and storage improves shelf-life, but adversely affects the flavor, aroma,
8 and nutritional qualities of orange juice. In order to extend the shelf-life, the Florida's Natural juice
9 is pasteurized. The pasteurization process removes the aroma and flavor from the juice, such that
10 Defendant must add flavor packs to restore the flavor and aroma lost. Defendant's Florida's Natural
11 juice undergoes additional extensive processing that includes the addition of aromas and flavors.
12 This extensive processing changes the essential nature of Florida's Natural sold by Defendant. It is
13 not "pure," "natural," or "fresh." Rather, it is a product that is *extensively processed* and
14 manipulated and engineered in laboratories, which explains its shelf-life of more than two months.

15   4.   Defendant is well aware that consumers want and demand natural products, and it
16 seeks to take advantage of that consumer preference by deceptively promoting and marketing
17 Florida's Natural as a premium product that is "pure," "natural," and "fresh" orange juice even
18 though it has been pasteurized, deaerated, stripped of its flavor and aroma, and then flavored before
19 it is packaged directly into the carton. Some of the non-natural aspects of these processes include:

20       a.   the removal of naturally present air from the intercellular spaces of the juice
21       through the deaeration process;

22       b.   the reduction and deactivation of naturally occurring enzymes and microbial
23       activity through pasteurization; and

24       c.   the addition of chemically engineered "flavor packs" to mimic the flavor that
25       natural orange juice has, which, because it is natural, requires no flavor pack.

26   5.   Rather than conveying a truthful message that Florida's Natural actually is a heavily
27 processed, pasteurized, deaerated, and flavored beverage, Defendant instead markets Florida's
28 Natural deceptively by stating simply that it is not reconstituted from concentrate and that it is flash

CLASS ACTION COMPLAINT                                        2

1  pasteurized.

2      6.      Through Defendant's deception, consumers are left with the false belief that Florida's
3  Natural is akin to fresh-squeezed, natural orange juice. Defendant's Florida's Natural is not fresh
4  orange juice and its taste is a result of added flavoring, not gentle processing, as Defendant suggests
5  in its marketing materials and advertisements.

6      7.      Due in part to their false belief as to the freshness of Florida's Natural, consumers are
7  willing to pay a premium price for Florida's Natural. Plaintiffs paid approximately 15% more for
8  Florida's Natural, as a purportedly "premium," "not from concentrate" juice than they would have
9  paid for a comparable juice reconstituted from concentrate.

10     8.      Additionally, Defendant's ability to extract a premium for its Florida's Natural would
11 not be possible without the flavoring provided by the flavor packs.

12     9.      Defendant uses blending and flavor packs to maintain uniform quality of Florida's
13 Natural so that regardless of the season consumers purchase a uniform product with a uniform taste
14 that would be impossible with a fresh-squeezed, natural orange juice.

15     10.     Plaintiffs seek relief in this action individually and on behalf of the class of all
16 purchasers in the United States of Defendant's Florida's Natural labeled and marketed as being
17 "100% Pure" and "Squeezed From Our Fresh Florida Oranges" for unjust enrichment and breach of
18 express warranty. Plaintiff Edwin Cahill seeks relief in this action individually and as a class action
19 on behalf of all purchasers in California of Defendant's Florida's Natural labeled and marketed as
20 being "100% Pure" and "Squeezed From Our Fresh Florida Oranges" ("the California Class") for
21 violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et*
22 *seq*., and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.
23 Plaintiff Frank Rogers seeks relief in this action individually and as a class action on behalf of all
24 purchasers in Florida of Defendant's Florida's Natural labeled and marketed as being "100% Pure"
25 and "Squeezed From Our Fresh Florida Oranges" ("the Florida Class") for violation of Florida's
26 Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*. Pending
27 completion of discovery, Plaintiffs may seek leave to amend the Class definitions.

28

CLASS ACTION COMPLAINT                                                                                    3

1

**JURISDICTION AND VENUE**

2    11.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C.
3  § 1332 as amended by the Class Action Fairness Act of 2005 because the matter in controversy
4  exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of
5  the classes are citizens of states different from the state of which Defendant is a citizen. *See* 28
6  U.S.C. § 1332(d)(2)(A).

7    12.    Personal jurisdiction is proper as Defendant has purposefully availed itself of the
8  privilege of conducting business activities within the State of California. Defendant, a citizen of
9  Florida, has distributed, advertised, and sold Florida's Natural, which is the subject of the present
10 complaint, in this District. Thus, under 28 U.S.C. §§ 1391(c)(2) and (d), Defendant is deemed to
11 reside in this District. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because
12 Defendant is deemed to reside in this District and under 28 U.S.C. § 1391(b)(2) because Defendant
13 conducts business in this District and a substantial part of the acts or omissions giving rise to the
14 claims set forth herein occurred in this District.

15    13.    **Intradistrict Assignment (L.R. 3-2)**: This action arises in San Francisco County, in
16 that a substantial part of the events which give rise to the claims asserted herein occurred in San
17 Francisco County. Accordingly, assignment of this action to the San Francisco Division is proper
18 pursuant to Civil L.R. 3-2(c) and 3-2(d).

19

**PARTIES**

20    14.    Plaintiff Edwin Cahill ("Plaintiff Cahill") resides in Malibu, Los Angeles County and
21 is a citizen of the State of California. Plaintiff Cahill brings this action individually and on behalf of
22 those similarly situated. Plaintiff Cahill purchased Florida's Natural in various grocery stores near
23 his home during the relevant class periods (as defined herein) for personal, family, or household
24 purposes. Most recently, Plaintiff Cahill purchased a half gallon container of Florida's Natural on
25 July 11, 2012 at Ralphs, a retail grocer, located at 23841 Malibu Road, Malibu, California. Plaintiff
26 Cahill relied upon false and misleading statements that were prepared by and/or approved by
27 Defendant and its agents and disseminated through the Florida's Natural packaging, marketing
28 materials, and advertising media. For each purchase, he understood that he was paying for a 100%

CLASS ACTION COMPLAINT                                                                    4

1  pure, fresh-squeezed, natural orange juice and was deceived when he received a lesser, processed,
2  and adulterated product. But for Defendant's misrepresentations, Plaintiff Cahill would not have
3  purchased Florida's Natural, or would not have paid a premium for Florida's Natural over the price
4  of other orange juice that is not promoted as 100% pure, fresh-squeezed, natural orange juice.
5  Plaintiff Cahill thus was damaged by Defendant's practice.

6    15.    Plaintiff Frank Rogers ("Plaintiff Rogers") resides in Orlando, Orange County and is
7  a citizen of the State of Florida. Plaintiff Rogers brings this action individually and on behalf of
8  those similarly situated. Plaintiff Rogers purchased Florida's Natural in various grocery stores near
9  his home during the relevant class periods (as defined herein) for personal, family, or household
10 purposes. Plaintiff Rogers purchased Florida's Natural periodically during the relevant class periods
11 (as defined herein) at Orlando-area grocery stores, such as Publix, Winn Dixie, and Walmart.
12 Plaintiff Rogers relied upon false and misleading statements that were prepared by and/or approved
13 by Defendant and its agents and disseminated through the Florida's Natural packaging, marketing
14 materials, and advertising media. For each purchase, he understood that he was paying for a 100%
15 pure, fresh-squeezed, natural orange juice and was deceived when he received a lesser, processed,
16 and adulterated product. But for Defendant's misrepresentations, Plaintiff Rogers would not have
17 purchased Florida's Natural, or would not have paid a premium for Florida's Natural over the price
18 of other orange juice that is not promoted as 100% pure, fresh-squeezed, natural orange juice.
19 Plaintiff Rogers thus was damaged by Defendant's practice.

20   16.    Defendant Citrus World, Inc. d/b/a Florida's Natural Growers is a cooperative of
21 citrus growers organized and existing pursuant to the laws of Florida, which has its principal place of
22 business at 20205 US Highway 27 North, Lake Wales, Florida 33853. Defendant distributes,
23 markets, and sells Florida's Natural nationwide.

24                              **FACTUAL ALLEGATIONS**

25          **A.    Defendant's False and Misleading Statements**

26   17.    During the relevant period, Defendant retained the responsibility and control for
27 labeling, marketing, and advertising Florida's Natural. Defendant created, approved, and issued the
28 advertising and marketing at issue in this action.

CLASS ACTION COMPLAINT                                                                          5

1    18.    Since as early as September 2008, Defendant has made certain representations in their

2    labeling, marketing, and advertising of Florida's Natural that are false and misleading. Specifically,

3    Defendant's packaging claims that Florida's Natural is a "Premium," "Not From Concentrate" juice

4    that is "100% Pure" and "Squeezed From Our Fresh Florida Oranges." Defendant even deceptively

5    names its product as "Natural."

6

7    

8

9

10

11

12

13

14    

15

16

17

18

19

20

21

22    19.    Defendant uses the words and phrases "Natural," "Premium," "Not From

23    Concentrate," "100% Pure," and "Squeezed From Our Fresh Florida Oranges" to establish Florida's

24    Natural as a premium product and to distinguish Florida's Natural from lower-priced concentrate

25    juices. These representations are intended to denote juice that is fresh or close to just squeezed.

26    20.    On the Florida's Natural website, Defendant further elaborates:

27

28

CLASS ACTION COMPLAINT                                                                          6



**NOT from Concentrate**

**From Concentrate**

Freezer

*Not*-from-concentrate juices have that right-from-the-grove, fresh-squeezed taste. And, just like fresh-squeezed juice, there's no water, sugar, or preservatives added, only 100 percent pure premium quality pasteurized orange juice. One sip, and you'll taste the difference it makes.

The difference is in how the fruit is processed. *Not*-from-concentrate means the fruit is squeezed, the juice is pasteurized and then packaged. From-concentrate means the fruit is squeezed, the water is extracted, which produces a concentrated form similar to that you see in the frozen food department. At a later time the water is added back in and the juice is pasteurized and packaged.

*See* http://www.floridasnatural.com/juices/not-from-concentrate (last accessed on August 27, 2012) (emphases in original).

21.     The video on the Florida's Natural website (http://www.floridasnatural.com/fun-stuff/videos (last accessed on August 27, 2012)), titled "How Do They Do It?," which details the from-the-grove-to-the-store-shelf process, makes no mention of the deaeration, pasteurization, or the addition of flavor packets and other processes discussed below.

22.     Similarly, Defendant uses marketing terms like the name "Florida's *Natural*," "100% Pure," and "Squeezed From Our Fresh Florida Oranges" to differentiate its purportedly fresh-squeezed, natural orange juice from other lower-priced, "from concentrate" juices.

CLASS ACTION COMPLAINT                                                                                   7

23. The term "natural," highlighted in the very name of the product, carries overtones of purity and health.

24. Surveys have shown that consumers prefer to buy natural foods whenever possible and that they believe that natural foods taste better and are healthier than other foods. "Natural" was the number one descriptor consumers looked for when purchasing food and drinks at retail stores in 2010. Consumers do not consider processed foods to be as nourishing as fresh, unprocessed foods.

25. Nearly 70% of consumers are extremely or very interested in natural foods generally, and more than half of all consumers are extremely or very interested in natural beverages specifically. At the same time, consumers eschew and deliberately avoid foods and beverages containing preservatives, added flavoring, added colors, and other chemical additives.

26. Consumers consider safety, taste, and purity more important than price when shopping for food and beverages, and will, therefore, pay a premium for pure and natural products.

27. Consumers' favorable views of natural beverages influence their behavior and – importantly for Defendant – purchasing decisions.

28. Defendant understands the importance and value consumers place on descriptors and labels with the words "fresh," "natural," and "pure" when considering whether to buy foods and beverages.

29. Defendant also realizes that consumers are increasingly aware of the relationship between health and diet and that consumers are demanding fresh and natural products that are minimally processed.

30. Throughout Defendant's marketing materials, advertising, website, labeling, packaging, and point-of-sale materials, Defendant represents that Florida's Natural is pure, natural, and fresh.

31. While Defendant claims that Florida's Natural is pure, natural, and fresh, Florida's Natural is far more artificial and adulterated. It is an extensively processed and flavored beverage.

32. Defendant unscrupulously capitalizes on consumers' heightened demand for natural products by deceptively marketing Florida's Natural.

CLASS ACTION COMPLAINT                                                          8

1    33.    In truth, Florida's Natural is heavily processed and flavored and is not 100% pure,

2    natural, or fresh. As described below, Florida's Natural is heavily processed and modified between

3    the time that the juice is produced and the time that Florida's Natural is packaged and sold to

4    consumers. Moreover, Florida's Natural contains flavor packs that essentially are used to replace the

5    flavor that is lost during the deaeration and pasteurization process. Thus, Florida's Natural

6    packaging misleads the consumer to believe that Florida's Natural is a premium product that is 100%

7    pure, natural, and fresh, when in fact it is not.

8

9                     **B.    Florida's Natural Is Not a Premium Product that is Natural, Pure, or**
                           **Fresh-Squeezed**

10    34.    When citrus fruit, such as the oranges used to produce Florida's Natural, reaches its

11    ripening point, such fruit is picked and prepared for a juice extraction process. During this process,

12    the meat of the fruit is pressed and squeezed and the juice is filtered into a large container.

13    35.    As noted by a reputable and authoritative source: "Air is naturally present in the

14    intercellular spaces of fruits. During fruit maceration, homogenization, and juice extraction cells are

15    crushed, the cell wall is disrupted and air is mixed into the juice. Air can be present as dissolved gas

16    in solution or associated with the pulp particles, for example, in orange juice. During cell disruption,

17    metabolites and enzymes that are normally compartmentalized are mixed, producing chemical and

18    biochemical reactions. Oxygen in air, present in the spaces between the juice vesicles and from the

19    surroundings, saturates the juice producing oxidation reactions that often result in browning, changes

20    in aroma, and loss of nutritional value. These reactions are exacerbated by the increase in

21    temperature during pasteurization and reduce the overall quality of the product during storage."

22    Garcia-Torres, R., Ponagandla, N.R., Rouseff, R.L., Goodrich-Schneider, R.M., and Reyes-De-

23    Corcuera, J.I., *Effects of Dissolved Oxygen in Fruit Juices and Methods of Removal*, 8

24    COMPREHENSIVE REV. IN FOOD SCI. & FOOD SAFETY 409, 409 (2009) (internal citation omitted).

25    36.    Because the presence of oxygen reduces the quality of stored juices, upon information

26    and belief, Defendant employs a deaeration process to remove oxygen from the juice used in

27    Florida's Natural to increase the storage life.

28

CLASS ACTION COMPLAINT                                                                                    9

1     37.    "Flash," or "vacuum," deaeration, is the most common method of deaeration in the
2 citrus industry. This method of deaeration "performs the dual role of removing oxygen and
3 removing excess peel oil from orange juice before pasteurization. This operation is called 'flash
4 deaeration' because of the sudden decrease in pressure that preheated juice undergoes as it enters the
5 deaeration tank, producing a practically instantaneous separation." *Effects of Dissolved Oxygen*, 8
6 COMPREHENSIVE REV. IN FOOD SCI. & FOOD SAFETY at 417 (2009) (internal citation omitted).

7     38.    To ensure a high elimination of dissolved oxygen, upon information and belief,
8 Defendant pre-heats Florida's Natural before deaeration, altering the juice's flavor and aromatic
9 quality. During the subsequent deaeration process, volatile compounds that provide flavor and
10 aroma to the juices are lost. Jordan, M.J., Goodner, K.L., Laencina, J., *Deaeration and*
11 *Pasteurization Effects on the Orange Juice Aromatic Fraction*, 35 LEBENSMITTEL WISSENSCHAFT
12 UND TECHNOLOGIE 391, 391-96 (2003). Indeed, following deaeration, the remaining liquid is
13 essentially sugary liquid that lacks the flavor and aroma of juice.

14     39.    Florida's Natural is also pasteurized to improve its shelf-life, but the improved shelf
15 life comes at the expense of the delicate flavor and aromatic quality of the juice.

16     40.    Pasteurization, a form of thermal processing, reduces, inactivates, or eliminates
17 enzyme and microbial activity in orange juice to extend its shelf-life, but also further reduces aroma
18 and flavor qualities, and produces undesirable off-flavor and off-odor compounds.

19     41.    Heating causes irreversible damage to the flavor of orange juice.

20     42.    Numerous tests have revealed the effect of pasteurization on the aromatic
21 composition of orange juice and the decrease in the amounts of important flavor and aroma
22 compounds like acetaldehyde, ethyl butyrate, and hexanal.

23     43.    As noted by a reputable and authoritative source: "There has been no technological
24 breakthrough or identification of flavor constituents that would enable thermally pasteurized juice or
25 reconstituted concentrate to taste exactly like fresh juice . . . . It may be simply stated that heating
26 irreversibly and negatively alters juice flavor, so that it no longer has the aroma and character of
27 fresh juice." Kimball, D., Parish, M.E., Braddock, R., *Oranges and Tangerines*, *in* PROCESSING
28 FRUITS, SCIENCE AND TECHNOLOGY 617, 630 (Barrett, D.M., *et al.* eds., 2d ed. 2004).

CLASS ACTION COMPLAINT                                               10

1    44.    These are not sophisticated scientific tenets and Defendant understands that:
2    pasteurization changes physical and chemical properties of orange juice; heat drives off volatiles
3    altering the original flavor of the fresh orange juice; and deaeration further causes orange juice to
4    deteriorate in taste and aromatic quality.

5    45.    Therefore, upon information and belief, Defendant adds aroma and flavoring to the
6    deaerated, pasteurized liquid, which provides Florida's Natural with a standardized aromatic and
7    flavor profile mimicking fresh-squeezed juice and which masks the effects of processing. Without
8    the addition of aroma and flavoring, Florida's Natural would not resemble juice at all; rather, it
9    would be an unpleasant, sugary liquid that would be not only unappealing, but nearly undrinkable.

10    46.    The aroma and flavoring additives, referred to in the industry as "flavor packs," are
11    designed by chemists and/or flavorists from processed fruit oils and essence. Flavor packs consist of
12    proprietary blends of chemically modified fruit and peel by-products. Flavorists design the flavor
13    packs to emphasize and highlight certain aromas and flavors associated with juice by fractionating
14    fruit oil and essence into individual components, reformulating them, and blending them in varying
15    mixtures. The aroma and flavoring added to Florida's Natural bears little resemblance to the natural
16    fruit oil and essence that leaves the juice during deaeration or that is altered during pasteurization or
17    storage.

18    47.    For example, flavorists have determined that the chemical ethyl butyrate provides
19    much of the sweetness in the natural orange flavoring in orange juice. In order to boost the flavor of
20    its orange juice, Defendant uses abnormally and unnaturally high levels of ethyl butyrate in the
21    flavor packs used to flavor Florida's Natural. Indeed, the level of ethyl butyrate in Florida's Natural
22    exceeds the levels that would be found in any oranges or truly fresh-squeezed orange juice.

23    48.    Thus, flavor packs, not the juice itself, give Florida's Natural its flavor. As such, the
24    distinctive taste of Florida's Natural is not derived from 100% pure, natural, or fresh fruit.

25    49.    Flavor has the strongest effect on quality impressions by consumers. Similarly,
26    surveys show that added flavorings are second only to added coloring in the degree of disapproval
27    they engender in consumers.

28

CLASS ACTION COMPLAINT                                                                          11

1   50.   Defendant understands that flavor guides consumers' purchasing decisions and their
2   willingness to pay for a product.

3   51.   Defendant also understands by experience that when flavor expectations are met or
4   exceeded, it generates repeat sales and fosters consumer loyalty.

5   52.   Flavor plays a central role in enhancing the value and appeal of Florida's Natural.

6   53.   A clear, consistent product flavor is crucial for Defendant to ensure consumer
7   satisfaction and maintain the appeal of Florida's Natural.

8   54.   In sum, Defendant labels, markets, and advertises Florida's Natural as pure, natural,
9   fresh-squeezed orange juice. Yet, these representations are false and misleading to the reasonable
10  consumer. Instead, Florida's Natural actually is heavily processed – with complex chemical
11  additives to restore flavor and aroma that is stripped from the juice during the deaeration and
12  pasteurization process – resulting in a juice that is the exact opposite of pure, natural, and fresh-
13  squeezed, as Defendant represents. The presence of non-natural chemical additives and the highly
14  processed nature of Florida's Natural is highly relevant and material to the reasonable consumer
15  shopping for premium, fresh-squeezed orange juice.

16  55.   During the relevant period, Defendant has engaged in a uniform marketing and
17  advertising program throughout California, Florida, and the rest of the United States, representing
18  that Florida's Natural is pure, natural, and made from fresh oranges to induce consumers to purchase
19  Florida's Natural in reliance upon these representations. These representations are prominently
20  displayed on Defendant's label and within Defendant's television and print advertisements,
21  promotional materials, and website.

22                          **C.    Damages to Plaintiffs and the Class**

23  56.   Plaintiffs purchased Florida's Natural in reliance upon Defendant's labeling,
24  marketing, and advertising that Florida's Natural is 100% pure, natural, and fresh orange juice. But
25  for Defendant's misrepresentations relating to the pure, natural, fresh quality of Florida's Natural,
26  Plaintiffs would not have purchased Florida's Natural.

27  57.   In fact, Plaintiffs and the Classes paid a premium to purchase Florida's Natural over
28  comparable products that do not purport to be 100% pure or natural.

CLASS ACTION COMPLAINT                                                                    12

1    58.    As set forth in the chart below, Florida's Natural costs more than comparable

2    products that do not purport to be 100% pure or natural.

3

| Product | Price | Price per ounce |
|---|---|---|
| Florida's Natural Original – No Pulp, Not From Concentrate – 59 oz. | $3.19 | $0.054 |
| Minute Maid Original – No Pulp, From Concentrate – 59 oz. | $2.79 | $0.047 |
| | Premium paid per oz. | $0.007 or 15% |
| | *Premium Paid per 59 oz. product* | $0.413 or 15% |

12                                **CLASS ACTION ALLEGATIONS**

13    59.    Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and

14    (b)(3) on behalf of the following nationwide Class:

15        All purchasers of Florida's Natural orange juice in the United States during the class period
          for the relevant claim.   Excluded from the Class are Defendant, any entity in which
16        Defendant has a controlling interest, and Defendant's legal representatives, predecessors,
17        successors, assigns, and employees.

18    60.    The class period for Plaintiffs' unjust enrichment claim is from September 2009 to the

19    present ("Unjust Enrichment Class Period") and for Plaintiffs' breach of express warranty claim is

20    from September 2008 to the present ("Breach of Express Warranty Class Period").

21    61.    Plaintiff Cahill brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2),

22    and (b)(3) on behalf of himself and a California Class defined as follows:

23        All purchasers of Florida's Natural orange juice in the State of California during the class
          period for the relevant claim. Excluded from the California Class are Defendant, any entity
24        in which Defendant has a controlling interest, and Defendant's legal representatives,
          predecessors, successors, assigns, and employees.
25

26    62.    The class period for the CLRA claim is from September 2009 to the present ("CLRA

27    Class Period") and for the UCL claims is from September 2008 to the present ("UCL Class Period").

28

CLASS ACTION COMPLAINT                                                                13

63. Plaintiff Rogers brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3) on behalf of himself and a Florida Class defined as follows:

All purchasers of Florida's Natural orange juice in the State of Florida from September 2008 to the present ("FDUTPA Class Period"). Excluded from the Florida Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's legal representatives, predecessors, successors, assigns, and employees.

64. Plaintiffs reserve the right to amend all class definitions at class certification based on additional research, factual investigation, discovery, and/or changes in federal or state law.

65. The definition of the Classes is unambiguous. Each Plaintiff is a member of the Class that he seeks to represent. Members of the Classes can be identified using Defendant's records. Class members can be notified of the class action through publication and direct mailings to address lists maintained in the usual course of business by Defendant.

66. The members of each Class are so numerous that their individual joinder is impracticable. The precise number of the members of each Class is unknown to Plaintiffs, but it is clear that the number greatly exceeds the number to make joinder impossible for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure.

67. There are questions of law and fact common to each Class for purposes of Federal Rule of Civil Procedure 23(a)(2). Defendant's advertising, marketing, labeling, and promotional practices were supplied uniformly to all members of each Class, so that the questions of law and fact are common to all members of each Class. All Class members were and are similarly affected by having purchased Florida's Natural for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendant as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiffs and other members of the Classes.

68. Plaintiffs assert claims that are typical of the claims of the members of each respective Class for purposes of Federal Rule of Civil Procedure 23(a)(3). Plaintiffs have no interests antagonistic to the interests of the other members of the respective Class. Plaintiffs and all members of the Classes have sustained economic injury arising out of Defendant's violations of common and statutory law as alleged herein.

CLASS ACTION COMPLAINT 14

1    69.    Plaintiffs will fairly and adequately protect the interests of the respective Classes for
2  purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are familiar with the basic facts that
3  form the bases of the claims of the Class members that they respectively seek to represent.
4  Plaintiffs' interests do not conflict with the interests of the other Class members that they
5  respectively seek to represent. Plaintiffs have retained counsel competent and experienced in class
6  action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel has successfully
7  prosecuted complex class actions, including consumer protection class actions. Plaintiffs and
8  Plaintiffs' counsel will fairly and adequately protect the interests of the Class members.

9    70.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)
10  because prosecuting separate actions by or against individual class members would create a risk of:
11  (A) inconsistent or varying adjudications with respect to individual class members that would
12  establish incompatible standards of conduct for the party opposing the class; or (B) adjudications
13  with respect to individual class members that, as a practical matter, would be dispositive of the
14  interests of the other members not parties to the individual adjudications or would substantially
15  impair or impede their ability to protect their interests.

16    71.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2)
17  because Defendant has acted on grounds that apply generally to each Class, so that final injunctive
18  relief or corresponding declaratory relief is appropriate, respecting each Class as a whole.
19  Defendant's advertising, marketing, labeling, and promotional practices were supplied uniformly to
20  all members of each Class.

21    72.    For purposes of class certification under Federal Rule of Civil Procedure 23(b)(3),
22  common questions of law and fact predominate over the questions affecting only individual
23  members of each respective Class. Some of the common legal and factual questions include:

24        a.    whether Defendant advertises or markets Florida's Natural in a way that is
25    false or misleading;

26        b.    whether, by the misconduct set forth in this Complaint, Defendant has
27    engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising,
28    marketing, and sales of Florida's Natural;

CLASS ACTION COMPLAINT                                                                15

c. whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of Florida's Natural have violated the UCL, CLRA and FDUTPA;

d. whether Defendant has been unjustly enriched by its conduct;

e. whether Defendant has breached an express warranty made to Plaintiffs and the Class; and

f. whether, as a result of Defendant's misconduct as alleged herein, Plaintiffs and the Class members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

73. Defendant has engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

74. The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts, *i.e.*, Defendant's misconduct.

75. Plaintiffs and the Class members have been damaged by Defendant's misconduct. The Class members have paid for products that would not have been purchased in the absence of Defendant's deceptive scheme.

76. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Classes' members. The relief sought per individual member of the respective Classes is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

77. Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the

CLASS ACTION COMPLAINT 16

similar nature of the claims of the members of each Class, as well as the absence of material differences in the state statutes and common laws upon which the claims of the members of each Class are based, the Classes will be easily managed by the Court and the parties.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
#### (Unjust Enrichment on Behalf of the Nationwide Class)

78.     Plaintiffs reallege each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

79.     Plaintiffs bring this claim individually and on behalf of members of the nationwide Class.

80.     Although there are minor permutations of the elements of the unjust enrichment cause of action in the various states, these differences are not substantial. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state. Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, California law applies to those claims.

81.     At all times relevant hereto, Defendant deceptively marketed and sold Florida's Natural to Plaintiffs and the Class.

82.     Plaintiffs and members of the Class conferred upon Defendant non-gratuitous payments for Florida's Natural that they would not have conferred but for Defendant's deceptive advertising and marketing. Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiffs and members of the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant and that reasonable consumers would have expected.

CLASS ACTION COMPLAINT                                                                                    17

1    83.    Defendant has been unjustly enriched in retaining the revenues derived from the Class
2    members' purchases of Florida's Natural, which retention under these circumstances is unjust and
3    inequitable because Defendant misrepresented that Florida's Natural is "Natural," "Premium," "Not
4    From Concentrate," "100% Pure," and "Squeezed From Our Fresh Florida Oranges" – when in fact
5    it is not – thus causing injuries to Plaintiffs and the Class members because they paid a price
6    premium due to the mislabeling of Florida's Natural.

7    84.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiffs and
8    members of the Class under these circumstances made Defendant's retention of the non-gratuitous
9    benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiffs and the Class
10   members for its unjust enrichment, as ordered by the Court.

11                                    **SECOND CLAIM FOR RELIEF**
12                **(Breach of Express Warranty on Behalf of the Nationwide Class)**

13   85.    Plaintiffs reallege each and every allegation contained above as if fully set forth
14   herein and, to the extent necessary, plead this cause of action in the alternative.

15   86.    Plaintiffs bring this claim individually and on behalf of members of the nationwide
16   Class.

17   87.    Plaintiffs formed a contract with Defendant at the time they purchased Florida's
18   Natural. The terms of the contract include the promises and affirmations of fact Defendant makes on
19   Florida's Natural packaging and through its marketing, advertising, labeling, and other means, that
20   Florida's Natural is "Natural," "Premium," "Not From Concentrate," "100% Pure," and "Squeezed
21   From Our Fresh Florida Oranges." Those promises constituted express warranties and became part
22   of the basis of the bargain, and are part of the standardized contract, between Defendant, on the one
23   hand, and Plaintiffs and the Class, on the other.

24   88.    In addition, or in the alternative, to the formation of an express contract, Defendant
25   made each of its above-described representations to induce Plaintiffs and the Class to rely on such
26   representations, and they each did so rely, on Defendant's "Natural," "Premium," "Not From
27   Concentrate," "100% Pure," and "Squeezed From Our Fresh Florida Oranges" representations as a
28   material factor in their decisions to purchase Florida's Natural.

CLASS ACTION COMPLAINT                                                                          18

1     89.     All conditions precedent to Defendant's liability under this contract have been

2 performed, including, to the extent required all pre-suit notices, to Defendant by Plaintiffs.

3     90.     Defendant has breached its express warranties in violation of California Commercial

4 Code § 2313 in that Florida's Natural is not, in fact, "Natural," "Premium," "Not From

5 Concentrate," "100% Pure," and "Squeezed From Our Fresh Florida Oranges," but rather contains

6 chemically-engineered flavoring and is heavily processed in violation of state express warranty laws.

7     91.     As a proximate result of this breach of warranty by Defendant, Plaintiffs and other

8 consumers have been damaged in an amount to be determined at trial because: (a) they paid a price

9 premium due to the deceptive labeling of Florida's Natural; and (b) Florida's Natural did not have

10 the composition, attributes, characteristics, nutritional value, health qualities, or value promised.

11                          **THIRD CLAIM FOR RELIEF**
            **(Violation of California Business & Professions Code**

12     **Section 17200 *et seq.* - Unfair Conduct on Behalf of the California Class)**

13     92.     Plaintiff Cahill realleges each and every allegation contained above as if fully set

14 forth herein and, to the extent necessary, pleads this cause of action in the alternative.

15     93.     Plaintiff Cahill brings this claim on behalf of the California Class under California

16 law.

17     94.     Under California Business & Professions Code § 17200, any business act or practice

18 that is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, or that

19 violates a legislatively declared policy, constitutes an unfair business act or practice.

20     95.     Defendant has engaged, and continues to engage, in conduct that is immoral,

21 unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiff Cahill and the

22 California Class. This conduct includes, but is not limited to, advertising, marketing, and labeling

23 Florida's Natural as a premium product that is "100% pure," "natural," and "fresh" when, in fact,

24 Defendant adds flavor packs and processes its juice in a manner that is inconsistent with its

25 representations. Defendant's scheme was and is immoral, unethical, oppressive, unscrupulous,

26 and/or substantially injurious to Plaintiff and the California Class.

27     96.     Defendant has engaged, and continues to engage, in conduct that violates the

28

CLASS ACTION COMPLAINT                                       19

1 legislatively declared policies of: (1) California Health & Safety Code § 110660 against the sale of
2 misbranded food; and (2) California Health & Safety Code § 110390 against false advertising of any
3 food. Defendant gains an unfair advantage over its competitors, whose advertising for products must
4 comply with California Health & Safety Code §§ 110660 and 110390.

5 97. Defendant's conduct is substantially injurious to consumers. Such conduct causes,
6 and continues to cause, substantial injury to consumers because consumers would not have
7 purchased Florida's Natural at all, or would not have paid such a high price for Florida's Natural, but
8 for Defendant's false promotion of Florida's Natural. Consumers have thus overpaid for Florida's
9 Natural. Such injury is not outweighed by: (i) any countervailing benefits to consumers or
10 competition; or (ii) any utility to Defendant. Indeed, no benefit to consumers or competition results
11 or utility to Defendant from Defendant's conduct. Since consumers reasonably rely on Defendant's
12 representations of Florida's Natural and injury results from ordinary use of Florida's Natural,
13 consumers could not have reasonably avoided such injury.

14 98. By committing the acts alleged above, Defendant has engaged in unfair business acts
15 and practices which constitute unfair competition within the meaning of California Business &
16 Professions Code § 17200.

17 99. Plaintiff Cahill and the California Class have all paid money for Florida's Natural.
18 However, Plaintiff and the California Class did not obtain the full value of the advertised product
19 due to Defendant's misrepresentations regarding the nature of Florida's Natural. Accordingly,
20 Plaintiff Cahill and the California Class have suffered injury in fact and lost money or property as a
21 result of Defendant's acts of false advertising.

22 100. In accordance with California Business & Professions Code § 17203, Plaintiff Cahill
23 seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,
24 and deceptive acts and practices and further seeks an order requiring Defendant to conduct a
25 corrective advertising campaign.

26 101. As a result of Defendant's conduct, Plaintiff Cahill seeks injunctive and restitutionary
27 relief under California Business & Professions Code § 17203.

28

CLASS ACTION COMPLAINT 20

1    102.    Plaintiff Cahill has standing to pursue this claim as Plaintiff has suffered injury in fact

2    and has lost money or property as a result of Defendant's acts as set forth above.

3    103.    The California Class members have suffered injury in fact and have lost money or

4    property as a result of Defendant's actions as set forth above.

5                              **FOURTH CLAIM FOR RELIEF**
                      **(Violation of California Business & Professions Code**
6      **Section 17200 *et seq.* - Fraudulent Conduct on Behalf of the California Class)**

7    104.    Plaintiff Cahill realleges each and every allegation contained above as if fully set

8    forth herein and, to the extent necessary, pleads this cause of action in the alternative.

9    105.    Plaintiff Cahill brings this claim on behalf of the California Class under California

10   law.

11   106.    Under California Business & Professions Code § 17200, any business act or practice

12   that is likely to deceive members of the public constitutes a fraudulent business act or practice.

13   107.    Defendant has engaged, and continues to engage, in conduct that is likely to deceive

14   Plaintiffs and members of the Class, all of whom are members of the general public. This conduct

15   includes, but is not limited to, advertising, marketing, and labeling Florida's Natural as a premium

16   product that is "100% pure," "natural," and "fresh" when, in fact, Defendant adds flavor packs and

17   processes its juice in a manner that is inconsistent with its representations.

18   108.    The 100% pure, natural, and fresh nature of Florida's Natural, which forms the basis

19   of the misrepresentations of Defendant described herein, was especially important to the purchasers

20   of Florida's Natural, including Plaintiff Cahill and the California Class. After reviewing the

21   packaging for Florida's Natural and Defendant's other advertising, Plaintiff Cahill purchased

22   Florida's Natural in reliance on Defendant's representations that Florida's Natural is a premium

23   product that is "100% pure," "natural," and "fresh." Plaintiff Cahill would not have purchased the

24   product at all, or would not have paid such a high price for the product, but for Defendant's false

25   promotion of Florida's Natural. Plaintiff Cahill and the California Class have all paid money for

26   Florida's Natural. However, Plaintiff Cahill and the California Class did not obtain the full value of

27   the advertised product due to Defendant's misrepresentations regarding the nature of said products.

28

CLASS ACTION COMPLAINT                                                                         21

1   Accordingly, Plaintiff Cahill and the California Class have suffered injury in fact and lost money or
2   property as a direct result of Defendant's misrepresentations and material omissions.

3   109.    By committing the acts alleged above, Defendant has engaged in fraudulent business
4   acts and practices, which constitute unfair competition within the meaning of California Business &
5   Professions Code § 17200.

6   110.    In accordance with California Business & Professions Code § 17203, Plaintiff Cahill
7   seeks an order enjoining Defendant from continuing to conduct business through its fraudulent
8   conduct and further seeks an order requiring Defendant to conduct a corrective advertising
9   campaign.

10  111.    As a result of Defendant's conduct, Plaintiff Cahill seeks injunctive and restitutionary
11  relief under California Business & Professions Code § 17203.

12  112.    Plaintiff Cahill has standing to pursue this claim as Plaintiff Cahill has suffered injury
13  in fact and has lost money or property as a result of Defendant's acts as set forth above.

14  113.    The California Class members have suffered injury in fact and have lost money or
15  property as a result of Defendant's actions as set forth above.

16

17
                            **FIFTH CLAIM FOR RELIEF**
                 **(Violation of California Business & Professions Code**
18   **Section 17200 *et seq.* – Commission of Unlawful Acts on Behalf of the California Class)**

19  114.    Plaintiff Cahill realleges each and every allegation contained above as if fully set
20  forth herein and, to the extent necessary, pleads this cause of action in the alternative.

21  115.    Plaintiff Cahill brings this claim on behalf of the California Class under California
22  law.

23  116.    The violation of any law constitutes an unlawful business practice under California
24  Business and Professions Code § 17200.

25  117.    Defendant's conduct violates California Health & Safety Code § 110660, which
26  prohibits the sale of any misbranded food. By misrepresenting that Florida's Natural is a premium
27  product that is "100% pure," "natural," and "fresh" when, in fact, Defendant adds flavor packs and
28  processes its juice in a manner that is inconsistent with its representations, Defendant's labeling of

CLASS ACTION COMPLAINT                                                            22

1   Florida's Natural is "false of misleading in any particular" in violation of California Health & Safety
2   Code § 110660.

3       118.    Defendant's conduct also violates California Health & Safety Code § 110390, which
4   prohibits the false advertising of any food. By misrepresenting that Florida's Natural is a premium
5   product that is "100% pure," "natural," and "fresh" when, in fact, Defendant adds flavor packs and
6   processes its juice in a manner that is inconsistent with its representations, Defendant's advertising
7   of Florida's Natural is "false or misleading in any particular" in violation of California Health &
8   Safety Code § 110390.

9       119.    By violating California Health and Safety Code §§ 110660 and 110390, Defendant
10  has engaged in unlawful business acts and practices which constitute unfair competition within the
11  meaning of California Business & Professions Code § 17200.

12      120.    Plaintiff Cahill and the California Class have all paid money for Florida's Natural.
13  However, Plaintiff and the California Class did not obtain the full value of the advertised product
14  due to Defendant's misrepresentations regarding the nature of Florida's Natural. Accordingly,
15  Plaintiff Cahill and the California Class have suffered injury in fact and lost money or property as a
16  result of Defendant's acts of false advertising.

17      121.    In accordance with California Business & Professions Code § 17203, Plaintiff Cahill
18  seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,
19  and deceptive acts and practices and further seeks an order requiring Defendant to conduct a
20  corrective advertising campaign.

21      122.    As a result of Defendant's conduct, Plaintiff Cahill seeks injunctive and restitutionary
22  relief under California Business & Professions Code § 17203.

23      123.    Plaintiff Cahill has standing to pursue this claim as Plaintiff has suffered injury in fact
24  and has lost money or property as a result of Defendant's acts as set forth above.

25      124.    The California Class members have suffered injury in fact and have lost money or
26  property as a result of Defendant's actions as set forth above.

27                          **SIXTH CLAIM FOR RELIEF**
                **(Violation of California Civil Code Section 1750 *et seq.* – Injunctive Relief**
28              **Consumers Legal Remedies Act on Behalf of the California Class)**

CLASS ACTION COMPLAINT                                                    23

1     125.     Plaintiff Cahill realleges each and every allegation contained above as if fully set
2 forth herein and, to the extent necessary, pleads this cause of action in the alternative.

3     126.     Plaintiff Cahill brings this claim on behalf of the California Class under California
4 law.

5     127.     California Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services
6 have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do
7 not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or
8 she does not have." Defendant violated this provision by representing that Florida's Natural is pure,
9 natural, and fresh-squeezed orange juice, when it is not.

10     128.     California Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are
11 of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are
12 of another." Defendant violated this provision by representing that Florida's Natural is pure, natural,
13 and fresh-squeezed orange juice, when it is not.

14     129.     California Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with
15 intent not to sell them as advertised." Defendant violated this provision by representing that
16 Florida's Natural is pure, natural, and fresh-squeezed orange juice, when it is not.

17     130.     Plaintiff Cahill and the California Class members suffered injuries caused by
18 Defendant's misrepresentations because: (a) they were induced to purchase a product they would not
19 have otherwise purchased if they had known that the promised pure, natural, and fresh-squeezed
20 nature of Florida's Natural was untrue; and/or (b) they paid a price premium due to the false and
21 misleading advertising of Florida's Natural.

22     131.     In compliance with the provisions of California Civil Code § 1782, Plaintiff Cahill
23 sent written notice to Defendant on September 6, 2012 informing Defendant of his intention to seek
24 damages under California Civil Code § 1750, *et seq.*, unless Defendant offers appropriate
25 consideration or other remedy to all affected consumers. Plaintiff Cahill intends to amend this
26 Complaint to seek damages pursuant to California Civil Code § 1781(a) should Defendant fail to
27 adequately and fully compensate Plaintiff Cahill and the California Class.

28

CLASS ACTION COMPLAINT     24

1    132.    Plaintiff Cahill and the California Class members are entitled to, pursuant to

2    California Civil Code §§ 1780(a) and (e), an order enjoining the above-described wrongful acts and

3    practices of Defendant, for damages and the payment of costs and attorneys' fees, and any other

4    relief deemed appropriate and proper by the Court under California Civil Code § 1780.

5
                                    **SEVENTH CLAIM FOR RELIEF**
6    **(Violation of Fla. Stat. Section 501.201 *et seq.* – FDUTPA on Behalf of the Florida Class)**

7    133.    Plaintiff Rogers realleges each and every allegation contained above as if fully set

8    forth herein and, to the extent necessary, pleads this cause of action in the alternative.

9    134.    Plaintiff Rogers brings this claim on behalf of the Florida Class under Florida law.

10   135.    The sale of Florida's Natural to Plaintiff Rogers and the Florida Class as described

11   herein constitutes the "conduct of any trade or commerce," as defined in Fla. Stat. § 501.203.

12   136.    Defendant's misrepresentations and material omissions in its marketing and

13   advertising of Florida's Natural as a premium orange juice that is "100% pure," "natural," and

14   "fresh" when, in fact, Defendant adds flavor packs and processes its juice in a manner that is

15   inconsistent with its representations, as described herein, constitutes false, deceptive, misleading,

16   and unconscionable practices in violation of FDUTPA.

17   137.    Defendant's unlawful practices directly damaged Plaintiff Rogers and the Florida

18   Class. It induced consumers to purchase Florida's Natural when they otherwise would not have or to

19   pay a premium price for Florida's Natural compared to comparable juice products.

20   138.    The damages suffered by Plaintiff Rogers and the Florida Class were directly and

21   proximately caused by the deceptive, misleading, and unfair practices of Defendant, as described

22   more fully herein.

23   139.    Defendant's practice and course of conduct, as alleged herein, is likely to mislead and

24   has misled consumers acting reasonably under the circumstances, to the consumers' detriment.

25   140.    Defendant has engaged in an unfair practice that offends established public policy,

26   and that is immoral, unethical, unscrupulous, or substantially injurious to consumers.

27

28

CLASS ACTION COMPLAINT                                                                          25

1    141.    Upon information and belief, Defendant acted and continues to act in an identical or
2 substantially similar manner with respect to each member of the Florida Class by adopting or
3 implementing identical or substantially similar practices.

4    142.    Plaintiff Rogers and the Florida Class seek monetary damages in the form of actual
5 and consequential damages recoverable from Defendant. They also seek injunctive relief against
6 Defendant. Plaintiff is entitled to recover reasonable attorneys' fees and expenses as a result of the
7 monetary and non-monetary benefits obtained on behalf of the Florida Class.

8                          **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiffs and the Class pray for relief as follows:

10    A.    That the Court determine that the claims alleged herein may be maintained as a class
11 action under Rule 23 of the Federal Rules of Civil Procedure;

12    B.    That the Court adjudge and decree that Defendant has engaged in the conduct alleged
13 herein;

14    C.    That the Court preliminarily and permanently enjoin Defendant from, in any manner,
15 directly or indirectly, continuing, maintaining, or engaging in the unfair, unlawful, and/or deceptive
16 practices alleged herein;

17    D.    That the Court order Defendant to conduct a corrective advertising and informational
18 campaign, advising consumers that Florida's Natural does not have the characteristics, benefits, and
19 qualities Defendant has claimed;

20    E.    That the Court order Defendant to implement whatever measures are necessary to
21 remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading
22 advertising, and other violations of law described in this Complaint;

23    F.    That the Court order Defendant to notify each and every individual who purchased
24 Florida's Natural of the pendency of the claims in this action in order to give such individuals and
25 businesses an opportunity to obtain restitution from Defendant;

26    G.    That the Court order Defendant to pay restitution to restore to all affected persons all
27 funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a
28 fraudulent business act or practice, or an act involving untrue or misleading advertising;

CLASS ACTION COMPLAINT                                                          26

1    H.    That the Court order Defendant to pay to Plaintiff Rogers and the Florida Class

2  damages in the amount of all monies paid for Florida's Natural together with interest at the statutory

3  rate pursuant to FDUTPA;

4    I.    That Plaintiffs and the Class members be awarded restitution, including disgorgement

5  of profits obtained by Defendant as a result of its acts of unjust enrichment;

6    J.    That the Court award Plaintiffs and the Class members damages to compensate them

7  for Defendant's breach of the express warranties created with regard to Florida's Natural;

8    K.    That the Court award Plaintiffs and the Class members both pre-and post-judgment

9  interest at the maximum allowable rate on any amounts awarded;

10    L.    That the Court award Plaintiffs and the Class members reasonable attorneys' fees and

11 expenses as provided by law; and

12    M.    That the Court award Plaintiffs and the Class members such other and further relief as

13 may be necessary and appropriate.

14                                      **JURY DEMAND**

15        Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Constitution of the

16 United States, Plaintiffs and the Class members demand a trial by jury for all issues so triable.

17

18 Dated: September 7, 2012          LEXINGTON LAW GROUP

19

20

21                                   MARK N. TODZO (State Bar No. 168389)
                                     LEXINGTON LAW GROUP
22                                   503 Divisadero Street
                                     San Francisco, CA 94117-2212
23                                   Telephone:  (415) 913-7800
                                     Facsimile:   (415) 759-4112
24                                   mtodzo@lexlawgroup.com

25

26

27

28

CLASS ACTION COMPLAINT                                              27

1    SCOTT+SCOTT, LLP
     CHRISTOPHER M. BURKE (State Bar No. 214799)
2    707 Broadway, Suite 1000
     San Diego, CA 92101
3    Telephone: (619) 233-4565
     Facsimile: (619) 233-0508
4    cburke@scott-scott.com

5    SCOTT+SCOTT LLP
     JOSEPH P. GUGLIELMO
6    500 Fifth Avenue, 40th Floor
     New York, NY 10010
7    Telephone: (212) 223-6444
     Facsimile: (212) 223-6334
8    jguglielmo@scott-scott.com

9    SCOTT+SCOTT LLP
     DAVID R. SCOTT
10   ERIN GREEN COMITE
     156 South Main Street, P.O. Box 192
11   Colchester, CT 06415
     Telephone: (860) 537-5537
12   Facsimile: (860) 537-4432
     drscott@scott-scott.com
13   ecomite@scott-scott.com

14   WOOD LAW FIRM, LLC
     E. KIRK WOOD
15   P. O. Box 382434
     Birmingham, Alabama 35238-2434
16   Telephone: (205) 908-4906
     Facsimile: (866) 747-3905
17   ekirkwood1@bellsouth.net

18   DAVIS & TALIAFERRO, LLC
     GREG L. DAVIS
19   7031 Halcyon Park Drive
     Montgomery, AL, 36117
20   Telephone: (334) 409-0545
     Facsimile: (334) 409-7001
21   gldavis@knology.net

22   MARKUN ZUSMAN & COMPTON LLP
     WILLIAM A. BAIRD
23   17383 Sunset Boulevard, Suite A-380
     Pacific Palisades, California 90272
24   Telephone: (310) 454-5900
     Facsimile: (310) 454-5970
25   tbaird@mzclaw.com

26   *Counsel for Plaintiffs*

27

28